John WILLIAMS, Appellant,

v.

Roger and Carmen ENGEN, Appellees.

No. S–10475.

Supreme Court of Alaska.

Dec. 5, 2003.

James W. McGowan, Sitka, for Appellant.

Steven Lewis Hempel, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Alaska Civil Rule 27 gives a court limited powers to order production of evidence for a legal action that has not yet been filed. The rule has usually been read to allow early production only to preserve existing evidence—not to discover whether evidence exists. John Williams believed that he might have a claim for misrepresentation arising from a real estate transaction and wanted evidence to confirm his suspicions and identify the prospective defendant. Relying on Rule 27, Williams asked for an order compelling a mortgage company to produce a report, not otherwise available to him, containing the information he needed. The superior court declined to order production, applying the conventional meaning of Rule 27. Williams appeals, urging us to read the rule as allowing discovery of facts needed to frame a complaint. We find no exceptional circumstances in this case that would justify expanding the rule's usual limits, and thus affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

Roger and Carmen Engen bought a home from the Estate of Vera Lowe. John Williams, a real estate agent associated with Re/Max of Juneau, represented the estate in the sale. As part of the transaction, the estate agreed to finance part of the Engens' purchase with a nine-month, $180,000, interest-free note.

Soon after the Engens signed the agreement, they discovered a crack in the home's foundation. They hired an engineer, John Cooper, who estimated that repairs would cost $125,000 to $200,000. Believing that this cost would prevent them from refinancing to pay off their $180,000 note, the Engens notified their attorney, who prepared a draft complaint alleging misrepresentation and failure to disclose required information. The draft complaint named as defendants the estate, Williams, and two partners of Williams at Re/Max of Juneau.[1] After the defendants reviewed the Engens' proposed complaint, all parties agreed to mediate the dispute.

At the mediation, Williams and Re/Max made a combined offer to settle their share of liability for $25,000. Williams was to pay $10,937.50 of this amount. With this proposal on the table as their final settlement offer, Williams and Re/Max left the mediation proceeding, saying that they did not care how the Engens and the estate resolved their dispute. The estate and the Engens proceeded to settle, agreeing that the original sale would simply be rescinded, while the Engens would remain free to accept the $25,000 offer from Williams and Re/Max. The mediator recorded this oral agreement and adjourned proceedings until a date could be set for all the parties to convene and sign the final, written version.

Almost immediately after reaching this agreement, the Engens began having second thoughts about giving up the home, so they resolved to check for available refinancing. The estate evidently did not object to this change of heart. Williams soon heard that the Engens had applied for refinancing from Residential Mortgage. He contacted the company, and one of its employees confirmed that the Engens had applied for refinancing, supporting their application with a letter from their engineer, Cooper. The employee also said that Residential could not show him Cooper's letter until the refinancing closed. Williams then learned from his own attorney that Residential had agreed to refinance the

Engens' home because Cooper's letter assured the company that the building was not in imminent danger and could be repaired after the refinancing agreement closed.

Nevertheless, two days after hearing this information, Williams met with the other parties and signed a final settlement agreement; the agreement changed the original settlement terms between the estate and Engens by leaving the home sale intact, but it expressly incorporated the $25,000 payment that Williams and Re/Max had offered at the mediation.

After waiting until the Engens completed their refinancing arrangements, Williams asked Residential Mortgage again for a copy of Cooper's letter. Residential again denied his request, stating that the Engens had instructed the company not to release the letter. But a member of Residential Financing's staff evidently advised Williams that the company would not have approved the refinancing unless the foundation had already been repaired. Williams contacted the Engens directly and asked for a copy of Cooper's letter, but they refused to disclose it.

Williams then petitioned the superior court under Alaska Civil Rule 27, seeking to compel Residential Mortgage to produce Cooper's letter. He alleged that he was "unable to pursue a suit to secure relief for the monies paid to the Engens, because I do not know who to sue, the Engens, [the] engineer [ ], or some other person or entity." Williams further alleged that "[p]erpetuation of the testimony will avoid a delay or failure of justice which would result if I cannot determine against whom I have a cause of action."

The Engens opposed the petition, contending that Williams's petition fell outside the scope of Rule 27 because it sought discovery to determine if evidence existed to support a cause of action rather than seeking to preserve known evidence of an already existing cause of action.[2] Following a hearing, Supe-

---

1. For simplicity, we will refer to Williams's partners and Re/Max of Juneau collectively as Re/Max.

2. Alternatively, the Engens argued that Williams waived his right to pursue a future cause of action by signing the settlement agreement, which expressly released the Engens from liability for any matters arising from the dispute over

rior Court Judge Larry C. Zervos denied Williams's petition, ruling that our decision in *McNett v. Alyeska Pipeline Service Co.*[3] supported the Engens' position and barred Williams from using Rule 27 to collect evidence for a future claim.

Williams appeals.

## III. DISCUSSION

Alaska Civil Rule 27(a) allows a prospective litigant "who desires to perpetuate testimony" to petition the court for permission to take a deposition, inspect a document, or conduct a medical examination before commencing an action.[4] Paragraph 27(a)(1) of the rule requires the petition to show:

(1) that the petitioner expects to be a party to an action in a court of the state but is presently unable to bring it or cause it to be brought, (2) the subject matter of the expected action and petitioner's interest therein, (3) the facts which the petitioner desires to establish by the proposed testimony and the reasons for desiring [to] perpetuate it, (4) the names or description of the persons the petitioner expects will be adverse parties and their addresses so far as known, and (5) the names and addresses of the persons to be examined and the substance of the testimony which the petitioner expects to elicit from each.... [5]

Paragraph 27(a)(3) allows the court to order the deposition, medical examination, or document production "if the court is satisfied that the perpetuation of the testimony may prevent a failure or delay of justice."[6]

In *McNett v. Alyeska Pipeline Service Co.*,[7] we noted that Alaska's Civil Rule 27 derives from Federal Rule of Civil Procedure 27; we thus observed that cases interpreting the federal rule provide a "useful general framework of the purpose of [Alaska Civil] Rule 27."[8] Rule 27's literal terms describe a method for a litigant with an existing claim, or facing an existing claim, "to perpetuate" evidence before the claim is filed. In keeping with the rule's literal purpose, federal courts generally bar would-be litigants from using Rule 27 as a tool to discover new information.[9] Courts and commentators alike agree that the rule does not authorize searches for causes of action,[10] and *McNett* spoke approvingly of these authorities:

---

their purchase agreement. The superior court did not decide this issue.

3. 856 P.2d 1165 (Alaska 1993).

4. Alaska R. Civ. P. 27(a)(1).

5. Alaska R. Civ. P. 27(a)(1).

6. Alaska R. Civ. P. 27(a)(3). *See also Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 55–56 (9th Cir.1961) ("a party may, in a proper case, proceed under Rule 27 for an order under Rule 34 without taking a deposition at all").

7. 856 P.2d 1165 (Alaska 1993).

8. *Id.* at 1168.

9. *See, e.g., Nevada v. O'Leary*, 63 F.3d 932, 936 (9th Cir.1995); *Penn Mut. Life Ins. Co. v. United States*, 68 F.3d 1371, 1376 (D.C.Cir.1995) (because Rule 27 is not a substitute for discovery, petitioner "must set forth in some detail the substance of the testimony it needs to preserve"); *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir.1975) ("Rule 27 is not a substitute for discovery."). *Cf. Martin*, 297 F.2d at 55 (putative defendant who makes showing that prospective plaintiff is destroying evidence may conduct limited discovery

under Rule 27); *In re Town of Amenia*, 200 F.R.D. 200, 203 (S.D.N.Y.2001) (prospective parties to cost-recovery suit under Comprehensive Environmental Response, Compensation, and Liability Act may discover information in the course of perpetuating testimony in danger of loss); *In re Delta Quarries & Disposal, Inc.*, 139 F.R.D. 68, 69 (M.D.Pa.1991) (same). *But see In re Alpha Indus.*, 159 F.R.D. 456, 456–57 (S.D.N.Y.1995) (allowing pre-filing discovery to "prevent failure or delay of justice" where Rule 11 would otherwise prevent company from determining whom to name as defendant).

10. *See, e.g., Ash*, 512 F.2d at 909; 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2071 (2d ed.1994) ("the courts have generally agreed that to allow Rule 27 to be used for [discovery of facts needed to frame a complaint] would be an 'abuse of the rule'") (quoting *Martin*, 297 F.2d at 55); 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 27.03 (3d ed. 1999) ("Rule 27 may not be used to search for possible claims, or to search for possible defendants. Nor should it be used to gather facts for use in framing a complaint."); *see also Sandmann v. Petron*, 404 N.W.2d 800, 802 (Minn.1987) (plaintiff may not use Rule 27 to discover facts on which to base expert opinion required for complaint under medical malpractice statute); *Harmon v. Mercy Hosp.*, 460 N.W.2d 404, 407 (N.D.

Federal cases have noted that Rule 27(a) " 'is not a method of discovery to determine whether a cause of action exists; and, if so, against whom action should be instituted.' " Instead, the Rule applies ["]to situations where, for one reason or another, testimony might be lost to a prospective litigant unless taken immediately. . . . Such testimony would thereby be perpetuated or kept in existence and, if necessary, would be available for use at some subsequent time.["] Both federal and state courts have read Rule 27(a) to restrict depositions that are merely searches for a cause of action, rather than an effort to preserve testimony concerning facts already known to the potential litigant.[11]

Here, Williams does not dispute that the superior court correctly applied the rule's mainstream interpretation. But relying on Rule 27(a)(3)'s language allowing court-ordered production to "prevent a failure or delay of justice," Williams asks us to broaden the rule's conventional reach.[12] He proposes "a fairly modest liberalization" that would "allow Mr. Williams—or a similarly situated party—to avail himself of Rule 27 if he can convince a trial court that an impediment to his bringing a viable cause of action can reasonably be expected to be removed through ... a Rule 27 proceeding." In such cases, Williams reasons, early discovery should be granted because it will "prevent a failure or delay of justice."

But this argument mistakenly reads Rule 27's "failure or delay of justice" phrase out of context. The phrase appears within a sentence that deals with perpetuating evidence: as indicated above, Rule 27(a)(3) allows court-ordered production only "if the court is satisfied that the *perpetuation* of the testimony may prevent a failure or delay of justice."[13] This singular focus on perpetuating evidence strongly suggests that courts should generally refrain from applying the rule unless the petitioner demonstrates a need to prevent a failure or delay of justice specifically arising from a risk of losing evidence. In other words, " 'The reasons for *perpetuating* the proposed testimony must demonstrate danger of losing the evidence by delay.' "[14]

Here, the superior court expressly found that Williams had failed to show any danger that Cooper's letter might be lost. The superior court's finding is not clearly erroneous. Indeed, Williams does not seriously question the finding. Instead, he asks us to hold that Alaska courts may consider factors other than danger of destruction or loss in deciding whether a petitioner has proved a sufficient need to perpetuate evidence. Williams points out, for example, that the Advisory Committee for the Federal Rules of Civil Procedure approvingly cited *Hall v. Stout,* an opinion declaring that "lapse of time [is] a risk affecting all evidence, irrespective of any particular condition of a witness."[15] But *Hall'* s broad dictum addresses testimonial evidence and translates poorly when directed at documentary evidence, because the pas-

---

1990) (party seeking pre-filing discovery of facts needed to frame complaint "misperceived the purpose of Rule 27").

11. *McNett,* 856 P.2d at 1168 (internal citations omitted).

12. *McNett* did not squarely address this issue. While noting that the meaning of the rule's "failure or delay of justice" language had been raised before the trial court to support "a need for court flexibility," we expressly observed that this ground had not been briefed on appeal. *Id.* at 1167 n. 1. And in deciding McNett's claim, we simply concluded that, on the record before it, the superior court could reasonably conclude that McNett's petition had failed to show that relief was necessary to prevent a failure or delay of justice. *Id.* at 1169.

13. Alaska R. Civ. P. 27(a)(3) (emphasis added).

14. *In re Ford,* 170 F.R.D. 504, 508 (M.D.Ala. 1997) (quoting 4 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 27 (3d ed.1999)).

15. *Hall v. Stout,* 4 Del.Ch. 269, 1871 WL 2089, *3 (Del.Ch.1871); *see also Mosseller v. United States,* 158 F.2d 380, 382 (2d Cir.1946) (district court could have allowed deposition without showing of deponent's ill health) (citing *Hall,* 4 Del.Ch. at 274). *But see Penn Mut. Life Ins. Co.,* 68 F.3d at 1373–74 (general allegation that passage of time might impair prospective deponent's ability to recall events not sufficient showing of danger to evidence); *Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 976 (11th Cir.1985) (general allegation that prospective witnesses were "not immune from the uncertainties of life and death" not enough to show danger of losing evidence); *Ash,* 512 F.2d at 913 (conclusory statement of proposed deponents' advanced ages does not satisfy rule's requirement to show need to perpetuate testimony).

sage of time alone generally poses little risk that evidence like Cooper's letter will be lost or destroyed. And as the superior court properly found here, Williams presented nothing to establish a case-specific risk of destruction or loss.

Williams cites several Rule 27 cases in which federal trial courts have considered factors other than risk of destruction, such as the uniqueness of the information at issue [16] and whether it lies in the adverse party's exclusive control.[17] But the cases cited by Williams generally consider factors like these to help measure the actual need for perpetuation of evidence when a case-specific danger of loss or destruction is shown. The cases do not suggest that these factors displace the need to establish some actual risk. All but one of the cited cases involved circumstances in which a danger of loss or destruction was apparent;[18] and in sharp contrast to Williams's situation, in all but one of the cited cases, the impediment preventing immediate commencement of an action was external to the petitioner's need for the evidence.[19] No-

tably, the sole exception cited by Williams, *In re Alpha Industries*,[20] has been roundly criticized and consistently rejected by other courts.[21]

Williams nonetheless points out that Rule 27 was drafted under the assumption that notice pleading would govern court proceedings; he questions the accuracy of this assumption, contending that today's courts have largely abandoned notice pleading and now require a high level of specificity. According to Williams, this trend in modern pleading practices makes limited pre-filing discovery necessary to prevent a failure or delay of justice. Specifically, Williams complains, unless he obtains Cooper's letter he will not be able to comply with Civil Rule 9(b), which requires complaints to plead the circumstances constituting a fraud with particularity,[22] and he also will be unable to comply with Civil Rule 11, which requires an attorney filing a claim to certify, after conducting a diligent inquiry, "that the complaint is well grounded in fact and is warranted by existing law."[23]

---

**16.** *See In re Bay County Middlegrounds Landfill Site*, 171 F.3d 1044, 1047 (6th Cir.1999); *Penn Mut. Life Ins. Co.*, 68 F.3d at 1375; *Tennison v. Henry*, 203 F.R.D. 435, 441 (N.D.Cal.2001).

**17.** *See Reints v. Sheppard*, 90 F.R.D. 346, 347 (M.D.Pa.1981).

**18.** *See In re Bay County*, 171 F.3d at 1046 (only issues on appeal are whether petitioner adequately showed facts it sought to establish or substance of testimony it sought to elicit); *Penn Mut. Life Ins. Co.*, 68 F.3d at 1375 (district court should have considered witness's advanced age in deciding whether evidence was in danger of being lost); *Tennison*, 203 F.R.D. at 442–43 (age of witnesses and long passage of time demonstrate risk of loss of evidence); *In re Town of Amenia*, 200 F.R.D. at 202 (petitioner made showing of witness's age and ill health); *In re Delta Quarries*, 139 F.R.D. at 70 (petitioner made showing of witness's serious illness).

**19.** *See In re Bay County*, 171 F.3d at 1047 (potential defendant to CERCLA lawsuit sought to preserve testimony about other potentially responsible party); *Penn Mut. Life Ins. Co.*, 68 F.3d at 1374 (petitioners could not yet bring suit because they had not exhausted their administrative remedies); *In re Town of Amenia*, 200 F.R.D. at 203 (potential CERCLA defendant sought to preserve testimony); *In re Delta Quarries*, 139 F.R.D. at 69 (same).

**20.** 159 F.R.D. at 456.

**21.** *See, e.g., In re Ford*, 170 F.R.D. at 508–09; *In re Sitter*, 167 F.R.D. 80, 82 (D.Minn.1996). Moreover, in contrast to Williams's situation, *In re Alpha* arguably did involve exceptionally compelling circumstances for early discovery. Although no imminent loss of evidence was shown in the case, a valid claim for economic harm unquestionably existed; the petitioner simply lacked information to identify the responsible party, and, in the absence of pre-filing discovery, it appeared that this inability to identify the correct defendant would expose the petitioner to significant, ongoing economic damages. *See In re Alpha*, 159 F.R.D. at 457.

**22.** Alaska Civil Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

**23.** Alaska Civil Rule 11 provides, in relevant part:

*The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any im-

But these arguments are unpersuasive. Civil Rule 9(b) calls for specificity, not certainty. The rule simply requires a claim of fraud to specify the time and place where the fraud occurred;[24] it seeks to prevent conclusory pleading by requiring a complaint to do more than "recit[e] without specificity that fraud existed,"[25] but it does not prevent plaintiffs from filing complaints based on available information and belief. Furthermore, while some courts have mentioned Civil Rule 11 in ruling on motions to perpetuate evidence under Rule 27, they have deemed the rule relevant only in circumstances suggesting that existing evidence might be lost or destroyed before the petitioner can complete a diligent inquiry for other evidence needed to frame a complaint.[26] Williams cites no authority or holding persuasively suggesting that Rule 27 can be used as he proposes to use it—as a substitute for diligent inquiry or as a tool to be used when diligent inquiry yields inadequate evidence.[27]

Williams also urges us to find his case exceptional because it "falls squarely into the pattern" described by the Ninth Circuit in *Martin*.[28] But *Martin* itself is an unexceptional case—except in a narrow sense that has no relevance here. The court in *Martin* allowed pre-filing disclosure of evidence unavailable to a potential defendant who lacked control over the timing of the plaintiff's claim but established that the plaintiff appeared to be destroying the evidence.[29] *Martin* thus

applies uniquely to defendants who lack control over filing and face destruction of evidence by their opponents.[30] The case has no bearing on the present case, where Williams is the potential plaintiff and has failed to demonstrate any appreciable risk of destruction or loss.

In summary, then, assuming that Rule 27(a) might vest trial courts with discretion in exceptional cases to go beyond the rule's traditional goal of preserving known evidence, we find here that Williams failed to establish any convincing reason to treat his case as exceptional. We thus conclude that the superior court properly denied his petition.

## IV. CONCLUSION

We AFFIRM the superior court's order denying Williams's Rule 27 petition.[31]

---

proper purpose, such as to harass or to cause unnecessary delay or needless expense in the cost of litigation.
(Emphasis added.)

**24.** *Law Offices of Vincent Vitale, P.C. v. Tabbytite*, 942 P.2d 1141, 1147 (Alaska 1997).

**25.** *Id.*

**26.** *See, e.g., In re Town of Amenia*, 200 F.R.D. at 203 (allowing pre-filing discovery upon showing of proposed deponent's age and poor health); *In re Delta Quarries & Disposal, Inc.*, 139 F.R.D. at 69 (allowing pre-filing discovery upon showing of ailing health of proposed deponent whose testimony might be lost while prospective plaintiff conducted a separate essential inquiry).

**27.** Williams relies primarily on *In re Alpha Industries*, 159 F.R.D. at 456. As already noted, *Alpha* has been persuasively rejected by other courts. Moreover, unlike Williams, the claimant

in *Alpha* had unquestionably established the existence of a valid claim and was stymied only in attempting to identify the potential defendant.

**28.** 297 F.2d at 49.

**29.** *O'Leary*, 63 F.3d at 936.

**30.** *See O'Leary*, 63 F.3d at 936 (noting a significant "distinction between Rule 27's invocation by a prospective defendant, as in *Martin*, and a prospective plaintiff or other applicant for judicial relief, as in this case," and quoting *Martin*'s comment that it would be an "[a]buse of the rule" for potential plaintiffs to use Rule 27 "as a means of discovery to enable them to draw a complaint").

**31.** Our disposition of the case makes it unnecessary to address the Engens' alternative argument that Williams waived his right to sue by signing the settlement agreement.